# United States Court of Appeals

### For the Eighth Circuit

_____

No. 25-1605

_____

Thomas Riles

*Plaintiff - Appellee*

v.

Carroll County, Arkansas, an Arkansas Municipality; Anthony Scotti, formerly known as Andrew Scotti

*Defendant*s

Officer Laralyn Koster

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Harrison

_____

Submitted: January 15, 2026
Filed: August 5, 2026

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

KELLY, Circuit Judge.

Thomas Riles filed a complaint alleging various violations of federal law against Carroll County and three officers, including Officer Laralyn Koster, for their

failure to provide him with adequate medical care while he was in pretrial detention for an alleged misdemeanor offense. The defendants moved for summary judgment and, while the district court[1] ruled in their favor on most of Riles's claims, it denied summary judgment on Riles's 42 U.S.C. § 1983 deliberate indifference claim against Koster. Koster filed this interlocutory appeal challenging the court's decision to deny her qualified immunity. We dismiss for lack of jurisdiction.

## I.

Thomas Riles has Gardner syndrome, which causes excessive polyp growth in the colon and can lead to colon cancer. In June 2010, as part of his treatment, a surgeon removed Riles's colon and created a Barnett Continent Intestinal Reservoir (BCIR). A BCIR is an internal pouch that holds feces and is accessible to the patient through a surgically-created hole in their abdomen, called a stoma. To prevent the BCIR from leaking feces, the stoma is sealed with a valve; the patient drains the BCIR by intubating it through the stoma's valve using a catheter. If the BCIR overfills—because, for example, the patient goes too long without draining it—the valve may become more difficult to intubate, or it may become so damaged that it requires surgical repair. If left untreated, an overfilled BCIR can rupture, resulting in life-threatening sepsis.

Riles typically drained his BCIR four times per day and, for that purpose, always carried several different types of catheters, a syringe, sterile water, and a bowl. On April 5, 2021, Riles attended a half-day training at his workplace, about an hour and a half drive from his home. He drained his BCIR before he left for the training, sometime before 6:00 a.m., and intubated it again during a break—but no stool drained that time. After the training, Riles began driving home. He stopped at a gas station for gas and to drain his BCIR, but the restroom was out of service. By that point, Riles was uncomfortable from not draining his BCIR since early morning,

---

[1]The Honorable Timothy L. Brooks, Chief Judge, United States District Court for the Western District of Arkansas.

and he drove over the speed limit to get to another gas station he knew of about 34 miles down the road.

Just before 3:00 p.m., Deputy Anthony Scotti pulled Riles over for driving 105 miles per hour in a 55 mile-per-hour zone. Riles alleges that he told Scotti he was speeding because he urgently needed a restroom and showed Scotti his stoma. Scotti arrested Riles, put him in the back of his patrol car, and called for a tow truck.

While they waited for the tow truck, Riles asked Scotti to get his medical supplies from his car before it was towed and described where each item was located. Scotti retrieved only a single catheter; he did not get Riles's other types of catheters, syringe, sterile water, or bowl, and did not ask Riles if he retrieved the correct items.

The tow truck arrived nearly an hour later, at which point Scotti drove Riles to the Carroll County Detention Center (CCDC). When they arrived, Scotti gave Riles's catheter to the intake desk and Riles told Scotti that he had retrieved the wrong medical supplies. Scotti left CCDC, and Deputy Laralyn Koster booked Riles in.

Around 4:20 p.m., someone completed the "Intake Questioner and Property List" while booking Riles in. That form included the question, "Is the Detainee aware of any SERIOUS Medical or Mental Issues?" and was filled in with, "cathader." The district court noted that the parties disputed whether Riles, Koster, or another officer filled out this form.

As another part of booking, CCDC Nurse Carrie Kauffman examined Riles, who told her he needed to drain his BCIR. Riles testified that Kauffman told officers—while Koster was standing "right there"—to "OR him, transfer him, or release him. We cannot care for him here." Kauffman also testified that she told the deputies, "[W]e did not have the capabilities of taking care of something like that . . . . We had absolutely nothing there that could have even attempted to relieve him."

After Kauffman examined him, Riles was put in a holding cell. A male officer came to the cell later that evening and gave Riles the catheter Scotti had retrieved from his car. Riles asked the officer for a syringe and sterile water. The officer left and did not return with medical supplies. Riles attempted to intubate his BCIR in the cell with just the catheter, but he was unsuccessful, and the attempt was so painful that he vomited. Riles beat on his cell door requesting a nurse until someone told him the nurse was not available. Riles alleges, and Koster acknowledges, that someone accessed Riles's cell to clean up the vomit. Riles remained in the holding cell until at least 9:00 p.m. and did not see Kauffman again despite numerous requests.[2]

Riles's testimony indicates that Koster was within earshot of, and could see, his cell during the foregoing events. He testified that when he "stepped to the doorway" of his cell he "could see her behind the counter," and though he did not explicitly testify that "her" referred to Koster, Riles did testify that Koster was the only woman officer he interacted with that night—and he specifically testified that Koster was stationed at the booking counter. Riles testified that Koster and another officer "had a good laugh about" him vomiting "a couple of times," and were "joking and laughing" as he was walked out of his cell and to his release—at which point he was "half covered in puke."

Because Riles was arrested for a misdemeanor offense, he could have been released with a citation in lieu of custody. Even after being taken into custody, Riles was able to post bond immediately and could have been processed first to allow him to seek medical treatment outside CCDC sooner. Instead, Koster chose to book out every other person detained at CCDC that day before Riles, who she began processing between 9:00 p.m. and 9:30 p.m. On his release paperwork, Koster marked "No" in response to both "Do you have a serious medical condition that may require attention while you are here? If yes, refer to medical staff," and "Does inmate

---

[2]Although the jail maintains surveillance cameras and Riles timely requested preservation of the relevant video, the jail did not produce surveillance video of the foregoing events.

have obvious visible signs or trauma or illness requiring immediate emergency of doctors care." But she marked "Yes" for "Does inmate have any other medical condition we should be aware of," and noted, "Has cathader, releave stool."

Riles was released sometime after 10:00 p.m. His girlfriend drove him to a hospital, where he was admitted at around 1:30 a.m. on April 6, but staff there were unable to drain his BCIR. His girlfriend then drove him to a second hospital, where doctors were ultimately able to drain his BCIR.

Because his valve was damaged from his time in CCDC custody, Riles can no longer drain his BCIR at will and must keep a catheter in place permanently. He must maintain a liquid diet and puree any solid foods to ensure the particles are small enough to pass through his now-permanent catheter. Because permanent catheterization comes with a risk of stool leaks, Riles cannot enter sterile food production facilities and therefore can no longer work the food and beverage industry sales job he held before his arrest.

Riles brought this 42 U.S.C. § 1983 action against Koster alleging, as relevant to this appeal, that she was deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment. Koster moved for summary judgment, asserting she was entitled to qualified immunity. The district court denied Koster's motion, explaining that a reasonable jury could credit Riles's testimony and other evidence in the record that would allow it to "find that Koster was subjectively aware of Riles's medical needs, and that . . . she knew he was at a substantial risk of serious harm and chose to do nothing." Koster raises this interlocutory appeal.

II.

"The 'first and fundamental question' in an appeal from a denial of qualified immunity is that of jurisdiction." Jones v. Kulesa, 178 F.4th 1179, 1182 (8th Cir. 2026) (quoting Taylor v. St. Louis Cmty. Coll., 2 F.4th 1124, 1126 (8th Cir. 2021)). Though this court has authority to hear an interlocutory appeal from a denial of

qualified immunity under the collateral order doctrine, McDaniel v. Neal, 44 F.4th 1085, 1088 (8th Cir. 2022), our jurisdiction "extends only to abstract issues of law, not to determinations that the evidence is sufficient to permit a particular finding of fact after trial," Presson v. Reed, 65 F.4th 357, 365 (8th Cir. 2023) (quoting McDaniel, 44 F.4th at 1088); see also Taylor, 2 F.4th at 1127. Thus "we lack jurisdiction when a defendant attempts to argue on [interlocutory] appeal that he did not do what the . . . plaintiff accuses him of doing." Cole ex rel. Est. of Richards v. Hutchins, 959 F.3d 1127, 1131 (8th Cir. 2020) (omission in original). "At this stage we are prohibited from weighing evidence or making credibility determinations," Morris v. Zefferi, 601 F.3d 805, 808 (8th Cir. 2010) (quoting Nelson v. Corr. Med. Servs., 583 F.3d 522, 527 (8th Cir. 2009) (en banc)), and "we are constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision, to the extent that version is not 'blatantly contradicted by the record.'" Thompson v. Murray, 800 F.3d 979, 983 (8th Cir. 2015) (citations omitted); see also Presson, 65 F.4th at 365.

Koster argues that the record blatantly contradicts the court's findings of material fact that, construing the evidence in the light most favorable to Riles, Koster: knew Riles needed to drain his BCIR emergently; knew Riles vomited while he was in his cell; and laughed at Riles for vomiting. See Presson, 65 F.4th at 366 (To succeed on a deliberate indifference claim, a plaintiff "must establish that '(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it.'" (quoting Johnson v. Leonard, 929 F.3d 569, 575 (8th Cir. 2019))). But, as described above, the court received evidence that could support each of these conclusions. See Thompson, 800 F.3d at 983 (dismissing interlocutory appeal for lack of jurisdiction where district court's "version of the facts [had] at least some support in the forensic evidence, camera footage, the opinions of [plaintiff's] experts, and common sense"). Because the court's findings are not "blatantly contradicted by the record," Koster's request exceeds the scope of our limited jurisdiction on interlocutory appeal. See id.; Presson, 65 F.4th at 365.

Koster additionally argues that the district court improperly concluded the right at issue was clearly established at the time of the alleged deprivation. See Presson, 65 F.4th at 365 (In assessing whether an officer is entitled to qualified immunity, the court must determine both "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." (quoting McDaniel, 44 F.4th at 1089)). But to rule in Koster's favor on that issue, "we would have to exceed our jurisdiction and cast aside the district court's factual findings, analyze the factual record, and resolve genuine factual disputes against the non-moving party. This we cannot do." Taylor, 2 F.4th at 1127 (collecting cases); see also Evans v. Krook, 106 F.4th 790, 792 (8th Cir. 2024) (quoting Taylor, 2 F.4th at 1127).

## III.

We dismiss Koster's interlocutory appeal for lack of jurisdiction.

_____